Good afternoon, your honors, this was a case that was run on submission originally, right? Or at least the calendar said it was on submission. Yes, your honors, although I believe I had requested arguing. No, no, no, I understand. I always appreciate the opportunity to appear. It's always good. I know that. We know that. Thank you, your honors. And we're glad to see you. Go ahead. Your honors, probation here is constantly monitoring Mr. Uhert's electronic activity. They see every WebMD search he makes, every e-mail he sends his mom, every newspaper article he reads. This is exactly what this court has prohibited. Computer monitoring must be narrowly tailored, but the monitoring here has no limits at all. We're not arguing that no monitoring is appropriate. Some monitoring is appropriate here, but unfettered monitoring just isn't allowed. Any consent to some such monitoring? Yes, your honor, we've never argued that no monitoring is appropriate both below and here. We're arguing that some monitoring is appropriate, but it has to have limits. This Court has suggested limits in Browder, such as a third party monitoring instead of probation, and the third party only alerting probation if there's some sort of suspicious. You made a proposal to the district court for some modification in the terms along whatever lines you'd be prepared to agree to? There was a proposal in the district court as well, I believe, to various of the conditions to have just internet monitoring rather than full computer monitoring. Right. That was rejected. But now you're saying you're agreeable to some computer monitoring. And I'm asking whether you have made the proposal to the district court. Your honor, perhaps I'm using the word computer and internet interchangeably in a way that I shouldn't have. That was inartful. Mr. Uhart has never disagreed that some internet monitoring is appropriate of his electronic devices. What do you want from this Court, then? What do you want from us? I want this Court to find that the electronic monitoring condition is overbroad and not narrowly tailored as it did in Lifshitz, and send it back down for a new monitoring condition to be in place. And I'm concerned that, I'm confused anyway, as to why you're here before us. You can make this application to the district court to limit it in some way. And I gather you've never said to the district court, well, we'll agree to this. We won't, we'd like you not to impose that. Or am I mistaken? That's incorrect, Your Honor. Below, defense counsel made a lengthy argument about why the condition here was overbroad and not narrowly tailored. In what way? I mean, because now, if we send it back to the district court, what are you going to ask for? If it were me, I would ask specifically for something like the remedy in Lifshitz, which resulted in a monitoring condition that only alerted probation if there was something related to child pornography or other suspicious activity. No. So the difference is that you want a third party to listen rather than probation. Well, that's one of the differences. I think Judge Radji's question is, did you say that to the district judge? Judge, this is really, to the extent that it makes a difference, actually, whether it's a third party or probation. But did you say to the district court, could you modify it so that a third party listens and just flags it to the probation if they've come across something that they believe is relevant? We didn't say exactly that, but we said the condition was overbroad. That's all we need to do to preserve the issue. We don't need to present to the court exactly what it needs to do to preserve the issue for your honors to hear it. Well, we can decide what you have to do to preserve it. It's not a question of, because you didn't do it, you're not entitled to the relief. Well, Judge Radji, I think, is suggesting is you could do it now. But the court has already rejected that the condition is overbroad. The district court specifically said, I do not believe my condition is overbroad. I think that unfettered monitoring is the right condition. And that does not conform to the Second Circuit's precedence. And that's why I'm here in the circuit. Going back to the district court would just be a fool's errand. We've done that already, and the district court rejected it. Am I right that there's nothing in the record identifying any websites to which your client has been denied access? He's at the – that's true. With respect to the preclearance condition, he's required to get preclearance for a whole host of categories of websites, and then probation either says yes or no. With respect to that condition, the issue is that the preclearance categories are vague. The government and I can't agree. The point is he has not been denied access to anything he's asked to have access to. Not that I'm aware of, Your Honor, but that's not the point. In Browder, in one of the other issues in Browder, the court discussed, I believe it was Judge Cabranes writing the opinion, that the issue isn't whether or not probation would say yes, whether permission would be granted. The question is whether or not the district court can have – force the defendant to ask probation instead of having the district court set the terms of the supervised release conditions. Here, we have a list of vague conditions that are – they're vague and overbroad. Some of them seem innocuous, like free hosting, which is just a free website. Or they're so vague that we don't know what they are because the government thinks free hosting means something different than I do and defense counsel did below. So those conditions create a situation where there's not notice of what Mr. Uhart can and cannot do on the internet without first asking approval from probation. And then the third issue with these conditions is the delegation to probation to make decisions, both with respect to what types of websites Mr. Uhart can use, but really with respect to whether or not he can continue to use the internet at all. This court has clearly established that the district court cannot delegate the power to probation to decide the contours of what sort of liberty a supervised releasee can have. That's what the court did here. It delegated to probation with the treatment provider, together, as probation kept saying, a treatment team, to determine whether Mr. Uhart's internet access could be restricted partially or entirely. Restricting internet access, if it is ever allowed, is something the district court would have to do. That's a First Amendment right, and to restrict it would clearly restrict somebody's liberty. The district court could not delegate it to probation. So it's these host of issues. The court doesn't know what the district court has to say. His internet use has to be restricted, period? That, you would say, would not be enough. So does the district court have to get into the nitty-gritty of every single website? If the district court wishes to restrict internet usage on certain websites, then yes, the district court should say which websites would be restricted. I would argue that wouldn't be necessary at all here with an internet monitoring condition, even a more limited one, through a third party, for example. Probation would be notified if there was any suspicious activity. It wouldn't need to do a preclearance. Why is it that you need a third party rather than probation? I mean, probation is the arm of the court charged to do this. Are you suggesting that a third party be on 24-7 simultaneous access to his computer? It's not a condition I came up with. It was one that was raised in Browder and which this Court deemed as better than probation looking at somebody's computer in terms of – We're now talking about this case in which, after all, what came up after the initial supervision terms were set was the hitherto unknown information that your client admitted using social media to contact dozens of minors and that he has sexually abused at least 10 children. I mean, you know, to say that the district court should now conceive of every website that's out there and specifically say he can be on Google, he can't be on this, he can be on this one, he can't be on that is absurd. The district court doesn't need to do that. But that's what you just suggested when you said that the district court had to identify the websites he could not be on. As opposed to what I understand is happening now, which is that he has to get preclearance from probation by telling them what website. You know, if you want, you can ask the district court whether your client can show up every morning and tell the district court what websites he wants to be on that day. Is that what you want? No, Your Honor. Right here we have a host of Internet conditions that result in pervasive monitoring of everything. They overlap on each other. The district court doesn't have to undertake to say exactly what websites he can go on. The district court could rely on the monitoring condition to alert probation if anything untoward is happening. The district court and the original sentencing court also already knew about the social media accounts. Nothing that came up later was the result of new conduct. Mr. Uhart had been in complete compliance with everything that he was asked to do while on supervised release. The only reason anything new came up was due to his interaction with his treatment provider and disclosure, which is something that is encouraged through the treatment process. This is not an overly burdensome requirement on the district court. It just requires the district court to follow this circuit's precedent and to not delegate to probation conditions that will restrict somebody's liberty. Ms. Glasshouse, speaking of not overburdening various elements of the judicial system, let me go full circle again. Assume for the argument that we affirm the September 25 order. That's the hypothetical. Would you not be able to go into the district court shortly thereafter and make this pitch, this argument? I'm sure it would lose, Your Honor. The district court is going to go around the circuit. Ms. Glasshouse, please help me. I'm trying to help you. You help me. It's called reciprocity. Look, I'm trying to come at the same question that my colleagues have raised with you. If you were to lose here, this is the other side of what do you want from us. Assume for the argument you lose here. You're able to go back to the district court, are you not, to raise this question again? I'm not suggesting that you think you would prevail or that you would be happy to go back, but you would be able to go back. Is that right? On any supervised release situation, you can return to the district court and ask for modification. I think that that's generally true. So we're dealing with a question in part of judicial administration. So I guess at least I am wondering why, as a practical matter, it wouldn't be in the taxed the patience of Judge Seibel by asking her to review your views again, your perspectives. Judges generally don't appreciate you coming back to ask the same thing you've asked for already. No, no, no. You'd be surprised. That's why we invented motions for reconsideration, right? Sure, Your Honor. Motions for rehearing. Let me ask you, you adverted to another judge. Was there an earlier judge, earlier than Judge Seibel? Yes, Your Honor. The sentencing judge, I believe, was out of, I believe, Texas, but a different district. Yes, yes, yes, of course. And this was transferred to the Southern District? Correct. After Mr. Uhart was released and had served six months of complete compliance on supervision. Great. Okay, good. Thanks very much. Thank you. You have reserved some time. May it please the Court, I think it's important to recognize. Not so fast. I have some more judicial administration. Sure. I can't quite make out the spelling of your surname. I apologize. And you're not otherwise on the brief. From my handwriting, I should have been a doctor. It's Maiman, Your Honor. Maiman. M-A-I-M-I-N, sir. Thanks very much. Sure thing. Go ahead. May it please the Court, it's important to note that Judge Seibel did not delegate discretionary authority to the probation office in terms of what the conditions of supervised release were. Rather, she reasonably determined that the terms of supervised release should include a prohibition on Mr. Ewart evading or undermining the goals of treatment by accessing websites that would fundamentally undermine those goals. She delegated, didn't delegate, she said that the treatment provider, and if you look very carefully, even though Ms. Glashouser keeps on saying that probation and the treatment provider jointly had this delegation, she said the treatment provider shall determine what will and will not serve the purposes of treatment. The probation officer simply has the duty in the preclearance method of being able to help Mr. Ewart figure out what it is that he is and is not permitted to do by creating the probation officer as a go-between between the treatment provider and Mr. Ewart. I often find in the district court that the U.S. attorney basically is representing probation. And many of the arguments that are made are really made as the representative of probation, which I always thought was awkward since probation is part of the court. But do you as a representative of the United States have any objection to the proposal of the appellant that this case could be solved by simply having a third party monitoring as opposed to probation, which seems not unreasonable to me. I do, and I do on two levels. The first level, which is kind of the 30,000 foot level, which is the isn't this what happened in Browder level, is that Browder didn't set forth a checklist for this is necessary to make a monitoring program work and this isn't. Rather, in Browder, the monitoring program that they had in place in that case happened to have third party monitoring. And so it was simply factoring that in. All I'm saying is would you, if you weren't, if you didn't feel some sort of an obligation to defend probation, would you object as a representative of the Department of Justice to her proposal, your adversary's proposal, that a third party listen and monitor all of these conversations or emails or whatever, and then find that there's any reason to? It seems to me to be not an unreasonable alternative that hardly warrants coming up here. In this case, I would, Your Honor, and let me explain why. I think that in this case, and there's a lengthy record here, as Your Honor knows, there is a particular need for somebody who is personally familiar with Mr. Ewert to be involved in the monitoring. And a third party sitting out in Omaha or wherever it is that the third party monitoring company is, doesn't know Mr. Ewert and doesn't know his particularized needs. One of the big issues here is that Mr. Ewert was specifically locating over and over and over again particular individuals, tracking them down, and this is something that a third party monitor wouldn't know. For example, if Mr. Ewert wanted to go onto Google and simply track down a person near him to find out more information, find out if she had any YouTube videos, if she had any photos, where it is that she lived, a third party monitor wouldn't know that the name Susie Q means anything and wouldn't notify the probation department. The probation department, on the other hand, being familiar with Mr. Ewert, being familiar with where it is that he lives, who it is that he's dealing with, who it is that he's not supposed to be dealing with, would see Susie Q and say, you know, there's something problematic about that because we know that Mr. Ewert particularly focuses on young girls in the area and we can do a little bit of background check to determine if that's a problem. So in this case, I would say that with Mr. Ewert, who has located individuals repeatedly in the past, there would be a real problem with saying we want a generic third party monitor who doesn't know the particulars of Mr. Ewert's needs to be involved. The other problem is that here, the treatment providers in every letter that Your Honor saw in both the appendix, the special appendix, and the attachments to the petition for modification, they all said that they thought that Mr. Ewert was a particular danger who needed close monitoring of the Internet. What does that mean? That means that they want that monitoring to be in conjunction with the treatment provider. And again, simply saying that there will be red flags raised on the basis of that the third party treatment provider thinks that your average child sex offender may look at this site or may not look at that site isn't sufficient to satisfy the needs of these treatment providers who keep on talking about the need for close monitoring of Mr. Ewert and of his Internet usage. I assume the treatment providers could qualify as the third party. They're not probation. Well, at that point, we're now asking the three, there are third party monitors, which are computer companies, software companies that have their own staff that are not the treatment providers. And then you have the treatment providers who aren't necessarily computer geniuses, don't have monitoring software. And what that would do is that would effectively force probation to go out and find if they exist a treatment provider that also provides third party monitoring software. Offhand, I don't know of that even existing. I do know who some of the third party monitors are and none of them are treatment providers. They all have their own companies doing third party monitoring. It would effectively force the probation department to go out there, see if something exists, and if it doesn't, either throw up its hands or try to encourage private companies to come together and create new products. And I just don't think that that's something that would be appropriate here just to resolve the appeal. Educators, how does probation do this? I mean, is this done by computer or how is it done? It is done by computer. So it's done in a few different ways. The probation office is able to look at random screenshots that are taken from the phone or the computer. Usually nowadays the phone is the most important item there. And they are able to look at lists of, for example, websites visited. By the way... It's incredibly labor intensive. It is. And frankly, it's a lot of spot checking, Your Honor. It's a lot of spot checking. It makes use of the fact that, realistically, they aren't monitoring it 24-7. That is, they don't have a probation officer who's assigned to be EWRT's monitor who sits there and 24-7 sits in front of a computer and watches everything that he does. Rather, as with anything else, the monitoring software allows them to do this spot checking and also allows them to have certain red flags. So if the treatment provider says, and I'll give a random example of something that might not come up with a generic third party treatment provider, if the treatment provider says, or third party monitor, if the treatment provider, for example, says, Mr. EWRT, he has a trigger from a foot fetish. And so you should be aware of him looking at any shoe sales sites because those are going to trigger problems that will end up escalating down the road. The probation office can then look for red flags. Is he going to Nordstrom Shoes? And if so, they can go and they speak to the treatment provider and they can speak to EWRT and see if this is a problem or if it is not. This is something where, again, a generic red flag at a third party provider doesn't do it, but they can set up red flags to tell them he has visited X or he has visited Y. One of the reasons that the preclearance condition links not only to treatment, the treatment provider, but also to, among other things, whether or not applications that are downloaded or websites that are visited would be consistent with monitoring is because another thing that they have to be concerned about is certain websites that may not be easy for them to monitor or may evade monitoring. For example, defense counsel brings up the concept of webmail and says, shouldn't he be allowed to have email? And nobody is saying he shouldn't be allowed to have email, but he should say, hey, I'm planning on using this webmail site. So that way they can go and they can make sure this isn't a webmail site that is designed to evade monitoring. Those do exist, Your Honors. And I'm sure that you've seen some of them pop up. You hear the word proton mail. That is a mail site that is specifically encrypted and designed to evade all sorts of monitoring. So all that the preapproval mechanism is, is it doesn't give them discretion to say, I think this is a good site or a bad site, but rather is this a site that conforms with the terms and conditions that Judge Seibel has set out? Those terms? Oh, I'm sorry. Those terms and conditions include, is it consistent with treatment as the treatment provider, who's the professional who has the day-to-day interaction with Mr. Ewert, has decided? Is it something that is monitorable? Is it something where the terms of that website bar Mr. Ewert from going onto that site? And notably, the conditions say that the probation office is required to use any site unless it otherwise violates the terms and conditions here. I think that one final thing that's, or two final things that are important to note here are that the defense counsel's brief effectively treats the probation officers as bureaucrats whose sole job is to determine whether at any given moment Mr. Ewert has violated the terms of his supervised release or he has not. That is not their job. They are involved in helping Mr. Ewert to rehabilitate and reintegrate into society. Obviously, the end game here is not to throw Mr. Ewert into jail or impose another condition. The end game here is to come to a world where there are no websites that Mr. Ewert can't get onto without a problem. That is, he's rehabilitated and he can go to X website or Y website without having problems. But they need to be given the ability to do that, and what this does is this narrowly tailors the tools that are necessary to address Mr. Ewert's background. And it does it in a way that probation and the treatment provider are able to look day-to-day to how Mr. Ewert is doing, and the treatment provider can say this is what he needs and this is what he doesn't. The alternative would involve every day Mr. Ewert showing up at Judge Seibel's chambers and going through a list of every website that he wants or Judge Seibel every day looking at the Internet and saying 50,000 websites were set up yesterday. Let me figure out which ones Mr. Ewert can go onto and which ones can't. That's not only impractical, but it would thwart the needs of supervised release, which include treatment and rehabilitation here. Can I ask you one other question about the condition? Certainly. The requirement of GPS monitoring, what is that for? Well, notably the treatment... I mean, and that was not suggested by probation. I think the treatment provider, my recollection, you could tell me if I'm wrong, is that the treatment provider says if you have this capability, then you should use it here. What purpose does the GPS monitoring serve? Well, what happened is the treatment provider suggested, and I will quote them, that Mr. Ewert's whereabouts continue to be closely monitored by his supervising agency and his exposure to children limited. And that's in Exhibit B to the petition for modification. And then it reaffirmed that if supervised, if the, it said we don't opine specifically... Where is that? I'm sorry. If your Honor looks at Exhibit B to the modification petition... No, we're in the appendix. I don't believe that that one is in the appendix. It came up, it's the equivalent of the VOSR petition. Here it was a modification petition. That's a problem. That's a problem. Because you think that we have the record before us, right? The record. I do. I'm sorry. In my experience, usually the petition for modification or the VOSR request is sent up. It's typically sent up under seal because it's not a public document. But if it's not, obviously we would be happy to submit it under seal today or tomorrow. Is the bottom line that this is in case he's going to a school every day at 330 that you want to know about it? Is that what this reduces to? That is absolutely right. And in fact, in the special appendix at page 19, the treatment provider said if the probation office normally uses GPS in order to closely monitor where somebody is, then we think that that would be appropriate. And one thing that's really important is that in that letter that's attached to the petition at Exhibit B, the treatment provider noted that Mr. Ewart claimed that he was now able to control his urges, but the reason why was particularly important. He said that it was, quote, because his behavior is now under scrutiny, which it was not in the past. In other words, Mr. Ewart was telling the treatment provider, I need somebody to watch me every minute because that is what helps to keep me on the straight and narrow. And certainly in light of the beliefs that he explicitly professed over and over, that not only was he attracted to young girls, but that he believed that to this day, that it was appropriate and, if anything, necessary for adults to engage in sexual activity with young children in order to help them to bond with one another and in order to help the children develop. In light of that, in light of his history, which included approaching children, friending children, going to Tahiti and posting pictures of himself with children over and over and over, it was wholly appropriate for Judge Seibel to say, maybe the treatment provider is right and we need to keep them on the straight and narrow here. Why don't you address Ms. Glashauser's concern that returning to Judge Seibel would be a fruitless endeavor. You were at the hearing of, this is final hearing, I gather. I was at Mr. Rubel's hearing. As Your Honor may recall, this was the case where Judge Seibel incorporated the record of Rubel because it was the same lawyers on either side or same offices on either side. Was it about the same issue? Well, there were a number of issues and the ones that are at issue here except for GPS were the same issues in Rubel as well. What is the status of the Rubel case? The Rubel case is on for argument in early December. I forget the precise date. I want to say December 5th, but I would hate to be wrong. So December 5th-ish is when Rubel is on. Samuel Raymond and Jason Sirr. Is that Mr. Sirr or Mr. Raymond? No, Mr. Raymond is in the back there. Mr. Sirr was defense counsel. I see. So they were there. So I'm curious to pursue the question of bringing this matter back to the option of sending this back to Judge Seibel. Even if we were to affirm Judge Seibel's order, is it not the case that defense counsel can appear before, ask for a hearing before Judge Seibel? Sure. Defense counsel can always petition for a modification and provide a basis. And if she were to do that, would you object to the hearing, to having such a hearing? It depends on what the modification and reason are. If he just comes before. She might just want to have a colloquy, an exchange of view. She very well might want to do that. I hate to say whatever it is that they do, we won't object to, because I don't know what it is that they would do. But obviously they are entitled under the Federal Rules of Criminal Procedure to petition for a modification of the terms of supervised release. And I think it would be fruitless if they went before her and said, we just don't like any of this, throw it out, for no reason other than we don't like it. But if they went to her and said, as they could have below, we think that this term is too vague, we think that this prohibits him from X, Y, and Z, and we want this modification, that's something that Judge Seibel, who's an extremely reasonable judge, would take into account. So you heard Ms. Glashauser explain here what her concerns are. Assuming she restated her concerns in a motion for reconsideration or for a further colloquy regarding the conditions of supervised release, you wouldn't object to that? I wouldn't object to her stating the concerns. I don't know if I... No, I know that. No, I gather that you wouldn't object to her speaking. Or you don't have, we don't have the authority to stop her either. No. No. I mean, I'm not necessarily saying I would agree with the modifications that she sought. So we're not asking you to agree. Would you object to having a hearing with respect to the matters that she has raised here today? As long as it was raised properly, of course not. Raised properly? Meaning on 8 by 11 paper? What are you talking about? No, under the Federal Rules of Criminal Procedure, there has to be a basis for seeking a modification of the terms of supervised release. And I think that if all she did was she said, we appeared before you before, we'd like you to reconsider on the basis of everything we said before and that's it, I don't think that there's any new basis. You've argued that the First Amendment issue is not ripe for review here. That's right. And so to the extent that that were a ground, if we were to agree with you, it's not ripe. But, you know, she's told the district court she wanted to be heard on whether or not the scope of the limitations violated the First Amendment. She would be entitled to make that argument, right? As long as she came up with a basis for it. I mean, in Rubell, which was incorporated, the parties both agreed that Packingham did not bar these types of conditions. I think that this court made clear Sarastito, I know that I've messed up the pronunciation, I apologize, that Packingham does not specifically apply here. Although certainly the concerns underlying Packingham, that is that the internet is nowadays a public, fundamentally a form of a public forum that gives rise to First Amendment issues. We have no argument with that. We think that here the restrictions are appropriate and do not violate the First Amendment. But if that were an issue raised below, we would gladly argue it below and see what Judge Seibel does with it. Okay, great. Thank you. Ms. Glashow. Your Honors, these issues were fully raised to the district court, which is why, and preserved by defense counsel, which is why we're here asking this circuit to reverse on these conditions. Maybe I'm not clear. I did not see that the possibility of a third-party monitor was raised. Did I miss that inadvertently? Well, Your Honor, the exact remedy of how a new internet condition would... No, that's no small matter, because I would think the next question would be who and who's going to pay for it. But I did not see any discussion of the possibility of a third party other than probation doing any monitoring. Did I miss something? No, Your Honor. All right, so that's something that has never been proposed to the district court in this case. Is that right? Yes, but the court said the conditions weren't overbroad. So the court disagreed with any limitation of any sort. So to go back and propose limitations when the court has already said unfettered monitoring is what I am imposing is fruitless. That takes an order from this court saying unfettered monitoring is fruitless. Go back to the drawing board. And hash out what is appropriate, which is exactly what happened in Lifshitz. What else besides a third party monitoring rather than probation are you saying needs to be done to, you know, satisfy your client's arguments? I proposed a few examples in my brief including having safe searches or keyword protections or the alert system. And were those argued to the district court? Argued to the district court was that limits needed to be placed. Right, but not those limits. It didn't get to that stage because the district court did not believe any limits. So the answer is no. No, Your Honor, because the district court thought no limit was appropriate. That's what I'm asking. Well, sometimes district courts think no limit because nothing is being told to them that can be done. And that's my concern here is the district court asked limits or no limits, fines, no. No limits. But wasn't told, well, Judge, if you do this, if you do this, if you do this, that would narrow it and still capture what you're concerned with. None of that has yet been presented to the district court, right? The defense counsel presented one possible limit which was to have internet monitoring without any monitoring of the actual computer and the court rejected it. The one limit he proposed was rejected. Well, you want to argue in favor of that one? I mean, you want to argue that this client should not have any internet, any computer monitoring? It was as opposed to internet monitoring but monitoring of, say, just documents he is writing. Yes, I think that was an appropriate suggestion. And you want to say that it was outside the district court's discretion to say no with someone who acknowledges the kind of problems that he's acknowledged. I want computer monitoring. You're arguing to us that that exceeded the district court's discretion. What exceeded the district court's discretion was placing unlimited computer monitoring and internet monitoring and physical location monitoring while we're at it. So it's full monitoring of everything in his life. Some limits had to be placed. I agree that the scope of those limits is appropriately brought in front of the district court, but to get to that stage, this court needs to remand the case to send it back down. And say what? And say that limits need to be placed. As per Browder, as per Lifshitz, Lifshitz did not explain to the court exactly what limits needed to be placed. It suggested options, as I am doing now, such as the alerts, I'm not sure if safe search and keywords were in Lifshitz in particular, maybe that was Browder, as it was later in time, but that limits needed to be placed and for the district court to consider that in the first instance. This court doesn't need to consider exactly the limits. The government, for the first time, is talking about, Mr. Uhart, tracking down people. I have never heard of that before. I don't see it in the record. There's no suggestion in the record that the limits I am bringing to Your Honor's attention would not be sufficient to deal with all of the court's concerns. Thanks very much, Ms. Cortez. Thank you, Your Honors. We'll reserve decision and we are adjourned. Court is adjourned. Thank you.